UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

No. 24-14147

_____

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

GRAY EDWARD RIVERA
Defendant-Appellant.

_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA

_____

BRIEF OF APPELLANT

KENT & McFARLAND
ATTORNEYS AT LAW

WILLIAM MALLORY KENT
Fla. Bar No. 0260738
RYAN EDWARD McFARLAND
Fla. Bar No. 1002508
24 North Market Street, Suite 300
Jacksonville, Florida 32202
904-398-8000
904-348-3124 Fax
kent@williamkent.com

Counsel for Appellant Rivera

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Eleventh Circuit Rule 26.1-1, I hereby certify that the following named persons are parties interested in the outcome of this case:

Berger, Hon. Wendy W. - United States District Judge;

Chang, Emily C.L. - Assistant United States Attorney;

Corrigan, Hon. Timothy J. - United States District Judge;

Handberg, Roger B. - United States Attorney;

Harrington, Jennifer Michele - Assistant United States Attorney;

Horovitz, Hon. Samuel J. - United States Magistrate Judge;

Kent, William Mallory - Appellate counsel for Rivera;

Lambert, Hon. Laura Lothman - United States Magistrate Judge;

Landers, Sean William - District court counsel for Rivera;

Rivera, Gray Edward - Defendant/ Appellant;

Toomey, Hon. Joel B. - United States Magistrate Judge;

Washington, Ashley - Assistant United States Attorney; &

Wright Peoples, Rosemaire Elaine - District court counsel for Rivera.

**STATEMENT REGARDING ORAL ARGUMENT**

Rivera requests oral argument to assist the Court in the resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      THE 404(b) SURPRISE - INCONSISTENT AND PERJURED TESTIMONY
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      JUDGMENT OF ACQUITTAL ARGUMENT - LEGAL INSUFFICIENCY
         RE THE ELEMENT OF SEXUALLY EXPLICIT CONDUCT. . . . 14

STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING A MOTION FOR
    MISTRIAL ONCE THE GOVERNMENT'S 404(b) WITNESS
    INDISPUTABLY PERJURED HERSELF DURING THE COURT'S
    MIDTRIAL INQUIRY INTO HER SURPRISE CLAIM THAT THE
    DEFENDANT HAD FORCED HER TO PERFORM ORAL SEX, WHEN
    THIS CLAIM WAS NOT IN THE GOVERNMENT'S PRETRIAL 404
    NOTICE, AND WHEN THE GOVERNMENT ASSURED THE COURT THE
    WITNESS WAS LYING WHEN SHE CLAIMED SHE HAD TOLD THE
    GOVERNMENT THIS IN HER PRETRIAL WITNESS PREPARATION

INTERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [24](#)

II. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING THE MOTION
FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS
LEGALLY INSUFFICIENT TO ESTABLISH SEXUALLY EXPLICIT
CONDUCT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [32](#)

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [43](#)

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [44](#)

CERTIFICATE OF TYPE SIZE AND STYLE. . . . . . . . . . . . . . . . . . . . . . . . [44](#)

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [44](#)

iii

# TABLE OF CITATIONS

**CASES**

*Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) . . . . . . . . . . . . . . . . . . . . . 39

*Burks v. United States*, 437 U.S. 1, 18 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). . . . . . . . . . . . . . . . 17

*Greene v. Massey*, 437 U.S. 19, 24 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Huddleston v. United States*, 485 U.S. 681 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) . . . . . . . 38

*Jonathan High v. United States*, 145 S.Ct. 1146 (2025) . . . . . . . . . . . . . . . . . . . 36

*New York v. Ferber*, 458 U.S. 747, 749 (1982) . . . . . . . . . . . . . . . . . . . . . 38, 40, 41

*Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) . . . . . . . . . . . . . . . . . . . 18

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-313 (1994) . . . . . . . . . . . . . . . 39

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) . . . . 38

*Thompson v. Keohane*, 116 S. Ct. 457, 464 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tibbs v. Fla.*, 457 U.S. 31, 40-41 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Anderson*, 5 F.3d 795, 804 (5th Cir.1993) . . . . . . . . . . . . . . . . . 29

*United States v. Beechum*, 582 F.2d 898, 902 (5th Cir. 1978) (*en banc*) . . . . . 26, 27

*United States v. Bowman*, 302 F.3d 1228, 1237 (11th Cir. 2002). . . . . . . . . . . . 18

*United States v. Carrasco*, 381 F.3d 1237, 1240-241 (11th Cir. 2004) . . . . . . 30, 31

iv

*United States v. Dost*, 636 F.Supp. 828 (S.D.Cal. 1986) . . . . . . . . . . . . 14, 33, 34

*United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.), cert. denied, 461 U.S. 909, 103 S. Ct. 1884, 76 L. Ed. 2d 813 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Ellis*, 935 F.2d 385, 386 (1st Cir.1991) . . . . . . . . . . . . . . . . . . . 29

*United States v. Gryzbowicz*, 747 F.3d 1396, FN8 (11th Cir. 2014). . . . . . . . . . . 34

*United States v. Gutierrez-Mendez*, 752 F.3d 424 (5th Cir. 2014) . . . . . . . . . . . . 27

*United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005). . . . . . . . . . . 19

*United States v. Hillie*, 39 F. 4th 674 (D.C. Cir. 2022). . . . . . . . . . . . . . . . 36, 38, 41

*United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016). . . . . . . . . . . . . . . . . . . 35

*United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (*en banc*) . . . . . . . . 17

*United States v. Johns*, 984 F.2d 1162 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . 18

*United States v. Johnson*, 56 F.3d 947, 958 (8th Cir.1995) . . . . . . . . . . . . . . . . . 29

*United States v. Joyner*, 899 F.3d 1199, 1206 (11thCir. 2018). . . . . . . . . . . . . . . 17

*United States v. Lewis*, 115 F.3d 1531, 1538-1539 (11th Cir. 1997) . . . . . . . . . . 29

*United States v. Merrill*, 513 F.d 1293 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . 18

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (*en banc*) . . . . . . . 17

*United States v. Murphy*, 2024 U.S. App. LEXIS 29576, *29-30 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Nicholson*, 24 F.4th 1341, 1354 (11th Cir. 2022) . . . . . . . . . . 28

*United States v. Roe*, 670 F.2d 956, 967 (11th Cir.), cert. denied, 459 U.S. 856, 103

S. Ct. 126, 74 L. Ed. 2d 109 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . 27

*United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007) . . . . . . . . . . . . . 17

*United States v. Williams*, 553 U.S. 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 38-40

*United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004) . . . . . . . . . . . . . 17

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) . . . . . . . . . . . . . . . 38

## STATUTES

18 U.S.C. § 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

18 U.S.C. § 2251(a) and (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 32, 36, 38, 42

18 U.S.C. § 2252A(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

18 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2256(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 41

18 U.S.C. § 2256(2)(A)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

D.C. Code § 22-3531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

N.Y. Penal Law § 263.00 (3) & (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## RULES

Rule 104, Fed. R. Evid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Rule 29, Fed. R. Crim. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [14](#)

Rules 404(b) and 414, Fed. R. Evid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . [4](#), [24](#), [25](#)

## CONSTITUTIONAL PROVISIONS

ART. III, § 1, United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [38](#)

Double Jeopardy Provision of the Fifth Amendment . . . . . . . . . . . . . . . . . . . [31](#), [43](#)

First Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . [40](#), [41](#)

## OTHER AUTHORITIES

21 Wright & Graham, Federal Practice and Procedure: Evidence § 5054, at 269 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [27](#)

Black's Law Dictionary (5th Ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [39](#)

Brief for Petitioner, *Ferber*, 458 U.S. 747, (1982) (No. 81-55), 1982 WL 608534, at *24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [40](#)

Eleventh Circuit Pattern Jury Instructions in Criminal Cases . . . . . . . . . . . . . . . [33](#)

https://ucr.fbi.gov/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/violent-crime/rape . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [25](#)

Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv.L.Rev. 165 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [26](#)

United States Attorneys' Manual, Civil Resource Manual, § 97 . . . . . . . . . . . . . [18](#)

Webster's Third New Int'l Dictionary (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . [39](#)

**STATEMENT OF JURISDICTION**

This court has jurisdiction over the appeal in this cause under 28 U.S.C. § 1291, which provides for an appeal from a final order of a district court. The appeal was timely filed within fourteen days of entry of judgment.

## STATEMENT OF THE ISSUES

**I. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING A MOTION FOR MISTRIAL ONCE THE GOVERNMENT'S 404(b) WITNESS INDISPUTABLY PERJURED HERSELF DURING THE COURT'S MIDTRIAL INQUIRY INTO HER SURPRISE CLAIM THAT THE DEFENDANT HAD FORCED HER TO PERFORM ORAL SEX, WHEN THIS CLAIM WAS NOT IN THE GOVERNMENT'S PRETRIAL 404(b) NOTICE, AND WHEN THE GOVERNMENT ASSURED THE COURT THE WITNESS WAS LYING WHEN SHE CLAIMED SHE HAD TOLD THE GOVERNMENT THIS IN HER PRETRIAL WITNESS PREPARATION INTERVIEW.**

**II. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO ESTABLISH SEXUALLY EXPLICIT CONDUCT**

**STATEMENT OF THE CASE**

Gray Edward Rivera ("Rivera" or "Appellant") was charged by indictment (Doc. 1) filed January 31, 2024 which was superseded May 23, 2024 (Doc. 2), by an indictment alleging three counts; count one charged Rivera with enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct on October 24, 2023 in violation of 18 U.S.C. § 2251(a) and (e), count two charged two was the same charge, but alleged to have occurred on the following day, October 25, 2023, and count three was the same charge again, but alleged to have occurred on November 19, 2023. The superseding indictment also contained a forfeiture provision pursuant to 18 U.S.C. § 2253, which *inter alia* sought forfeiture of two cell phones, an Apple iPhone 11 and a Samsung Galaxy Z Fold 5, both of which had been seized from Rivera on December 21, 2023. (Doc. 29) The alleged victim in all three counts was the same, "Minor Victim 1."

The Government summarized its case in its opening statement in pertinent part as follows:

> On December 18th, 2023, the Clay County Sheriff's
> Office responded to the residence of that child, a home in
> Orange Park, Florida. The sheriff's office was called there by
> her mother.
> The mother learned that there may be hidden cameras
> in her home that had been placed there by the defendant when
> she purchased a spy camera detector.

She used it, and she found several hidden cameras in ordinary items: a smoke detector that contained a hidden camera located in the living room area and three items in that child's bedroom that contained cameras, a Bluetooth speaker, a USB charging tower, and a picture frame/clock.

The defendant gifted those three items, the Bluetooth speaker, that USB charging tower, and that picture frame/clock, to the child.

. . .

After a deputy with the Clay County Sheriff's Office initially responded to the residence, Detective Ellis was called out to the home, because you'll hear those are the types of cases that he works, and he joins the investigation. The hidden camera items in the residence were taken by Detective Ellis.

, , ,

Part of the investigation in this case included sending out requests for information to companies like Amazon, Zetronix, and PayPal. All of those companies produced records indicating that the defendant purchased three hidden spy cameras: the smoke detector camera, the Bluetooth speaker camera, and the picture frame/clock camera. And PayPal confirmed that purchase from Zetronix.

Later, law enforcement was able to obtain the defendant's work and personal cell phones, a Samsung Galaxy Z Fold5 phone and an iPhone on December 21st, 2023. They were obtained when the defendant reentered the United States from an international trip as part of a border search that international travelers can be subjected to when they reenter the United States.

These phones were reviewed by a special agent at Homeland Security Investigations trained in cell phone analysis. You will learn that the defendant's careful camera setup paid off for him. He captured that child undressing several times in her room.

Some of those images and the video are the basis of the three charges against the defendant, two counts of production and attempted production of child pornography on

3

October 23rd and November 19th, 2023, and one count of attempted production of child pornography on October 25th, 2023.

(Doc. 62, pp. 19-22)

The Government did not mention in its opening statement its anticipated Rule 404(b) witness, referred to as Adult Victim 1. But that witness was to play a pivotal role in the trial and is at the heart of this appeal.

## THE 404(b) SURPRISE - INCONSISTENT AND PERJURED TESTIMONY

There was no pretrial litigation in the case with exception of a notice filed by the Government of intention to offer evidence of similar acts pursuant to Rules 404(b) and 414 of the Federal Rules of Evidence.[1] (Doc. 32) Rivera filed a memorandum in opposition. (Doc. 36)

The alleged victim in the 404(b) notice was Adult Victim 1. (Doc. 32) The notice stated the following with respect to the conduct the Government sought to introduce at trial:

> According to an interview with Adult Victim 1, the defendant intentionally touched her when she was a minor child in a lewd or lascivious manner. According to Adult Victim 1, when she was 13 years

---

[1] There was a single notice filed by the Government under both Rules 404(b) and 414 outlining the same prior bad act evidence. For ease of reference hereinafter each reference to 404(b) will be meant to include 414, unless otherwise specified.

old, she and her mother moved in with the defendant in December 2010. Initially, the defendant asked Adult Victim 1 about engaging in sex with her boyfriend. The defendant also showed Adult Victim 1 a picture of a woman in lingerie and told her "I like women like that. Like your mom. One day you will have your mom's body." In January of 2011, the defendant went into the bedroom of Adult Victim 1, a child at the time, while her mother was in the shower. The defendant was wearing only a pair of grey boxers and approached Adult Victim 1's bed where she was laying, grabbed her neck, and told her to look at his penis. Adult Victim 1 said that the defendant took his erect penis out of his boxers and hit her in the face with it. Adult Victim 1 said she protested loudly and cursed at him, and the defendant put his penis away and left her room.

(Doc. 32)

The district court entered an order permitting the noticed testimony by Adult Victim 1 based on the pleadings presented to the court. (Doc. 47)

However, in the trial, the defense and Government were both caught by surprise when Adult Victim 1 did not present the noticed testimony, but instead testified that the Defendant forced her to perform oral sex on him. This led to a lengthy series of sidebars and proffers, as follows:

[Adult Victim 1] A. I recall that it took place in January. I was in my room.
I was laying on my bed watching TV, and he entered my room. I remember that he was shirtless and had boxers on.
And he stood there for a few seconds. Then he approaches me, and he pulls his penis out. And I recall that it was stiff, and he said, "Look at it."
**And then I was -- and then I was paralyzed, and he grabbed my head in this manner.**
**THE INTERPRETER: And the witness is gesturing with**

5

her head behind her neck.

THE WITNESS: And he obligated me to do oral --
perform oral sex on him.

MR. LANDERS [Defense Counsel]: Judge, may we approach?

(At sidebar, out of the hearing of the jury:)

MR. LANDERS: Judge, I'm going to object under 403
and 404. The government's notice was that Mr. Rivera,
according to this witness, slapped or touched the face; not
oral sex, touched the face.

And the Court allowed this in under the guise that
her testimony would be not that there was oral sex performed
but that her face or cheek were touched -- was touched by the
penis.

. . .PROFFER

BY MS. WASHINGTON [Assistant United States Attorney]:
Q. Ms. Otero, I think the last thing that you mentioned was
about oral sex.

Did you actually perform oral sex?

A. Yes.

Q. Did you previously tell Special Agent Luedke, when meeting
with him, that he'd only put his penis toward your mouth, but
is this the first time you've actually disclosed that it was
more than that?

A. I only performed oral sex. That's the only thing that
took place.

Q. I'm sorry. My question was bad.

When you previously met with Special Agent Luedke and
even myself previously, I think before you had discussed this
incident, and you had indicated that -- and I'm sorry; I know
this is very difficult -- that Mr. Rivera placed his penis near
your mouth.

And so today you've mentioned performing oral sex.

Was that something you didn't feel comfortable sharing before
now?

A. I've been -- I've been silent about what took place for 14
years in my life. For me, it's not a very comfortable matter
to talk about, even though it didn't -- it didn't escalate

6

to -- further than that, but it's very difficult for me to
speak on that matter.

Q. I understand.

**MS. WASHINGTON: Your Honor, as you can see, this is
the first time I'm hearing of this as well. It is something --
the first time it came out today**.

. . .

[DEFENSE COUNSEL] Clearly this witness has made an
inconsistent statement that is ever evolving, as I think it's pretty clear,
as to how much detail she wants to get into with who she's
talking to.

I think it's clear this witness and her credibility
is at issue, which the Court took into consideration in the
Court's order. And this is page 4, third paragraph in the
order -- excuse me.

**So the record's clear, the order overruling the
defense objection as to 414 and 404(b), says that,
"Additionally, the testimony of the prior act was provided
directly by the victim, and the defendant does not offer any
evidence or argument to dispute its reliability."
Clearly now there's evidence to dispute reliability
with the Court.** And the balancing test for 414 and 404(b) has
to consider 403 and any probative value outweighing any danger
of unfair prejudice -- any probative value is outweighed by the
danger of unfair prejudice confusing the issues.

We're in a position now -- I'm in a position now
where the jury has clearly heard that this went from what has
been represented in a sworn document by Agent Luedke on May
3rd, 2024, during a FaceTime interview, that I believe the
government relied on in filing its notice and for the Court to
take into consideration prior to this witness testifying and
prior to trial -- that this witness told Special Agent Luedke,
on May 3rd, 2024, according to Agent Luedke's report, that
Mr. Rivera took his erect penis out of his boxers and hit her
in the face with it.

Now it has transitioned into oral sex, which can, of
course, still be considered as far as similar fact evidence,

7

but it's the notice requirement, No. 1, but also the prejudicial effect, that I believe at this point the jury has heard a bell that cannot be unrung.

And even if I ask the Court to issue a cautionary instruction for the jury to disregard, the jury doesn't know what they're disregarding, essentially. And I think this is not just an issue for the jury but also an issue for the Court when taking in consideration the credibility of this witness. After consulting with Mr. Rivera, on his behalf, I do have to ask the Court for a mistrial at this time, given the prejudice that can't be overcome by any curative instruction or cautionary instruction.

The government called this witness with the intent to prove one point. Clearly this is proving a different point, that whether the notice requirement is -- and I don't dispute that Ms. Washington would not have put this witness on the stand to testify to something that's previously not been disclosed.

**And I think it's clear from Agent Luedke and Ms. Washington this witness has not disclosed the new allegation of oral sex**, which in the eyes of the jury -- clearly this is a child production case that the government has a superseding indictment for three counts.

It's not a case that involves molestation, but ultimately, in the realm of similar fact evidence and although the Court already gave the limiting instruction and would give the limiting instruction, even with potential impeachment for this witness to admit that she lied previously and her credibility would be at issue, it becomes a notice and prejudicial effect to my client where **I have to request, based on what we've -- Mr. Rivera and I have discussed, a mistrial at this time.**

If the Court denies that, then I'll make other requests.

THE COURT: Well, I don't think she got -- she didn't say anything about oral sex in front of the jury, I don't believe. She said he grabbed her head and at that point in

time, I think --

**MS. WASHINGTON: Yeah. I think she said he asked her
to perform oral sex.**

**COURT REPORTER: 1:46.**

**THE COURT: He did. And she said, "He grabbed my
head. He obligated me to do oral -- perform oral sex on him,"
and that's when we came sidebar.**

**MR. LANDERS: Yes, Judge. That's when I jumped up
and asked to approach since that was a brand-new revelation to
me and clearly testimony that was heard by the jury through the
interpreter, as being outside of the -- the prior Williams Rule
notice.**

**THE COURT: It is outside the notice.**

**MS. WASHINGTON: Well, it's certainly nothing that we
were aware of before now . . .  Now, certainly, had we had that
information from
Ms. Otero, we would have included it.**

. . .

**THE COURT: I'm going to take your request for a
mistrial under advisement. I'm not going to rule on it right
now.**

. . .

**MR. LANDERS: And that's my concern too, is that
she's already admitted to the Court during the proffer and to
Ms. Washington that she's been asked the same question several
times by different people, one being Ms. Washington, a federal
prosecutor, and one being Agent Luedke, a Homeland Security
investigator, and she's given different responses.**

. . .

MR. LANDERS: I think while the jury is out, Judge,
and to not bring anything more in front of the jury than, of
course, already has, I would just ask for a limited proffer --

THE COURT: Okay.

MR. LANDERS: -- as to who has she spoken to before
about this; who has she disclosed obligating oral sex. Is this
the first time?

. . .

**PROFFER**

**BY MR. LANDERS:**

**Q. Ms. Otero, prior to today, did you meet via FaceTime back in May with Agent Luedke with Homeland Security and tell him** that Mr. Rivera took out his erect penis, out of his boxers, and hit you in the face with it?

A. Yes. I conveyed -- affirmative. I conveyed to him that he had hit me with his penis between my mouth and ...

THE WITNESS: (In English:) And my cheek.

THE INTERPRETER: -- and my cheek.

And the witness is gesturing with her hand.

**BY MR. LANDERS:**

**Q. And, Ms. Otero, what you testified previously today in front of the jury, that Mr. Rivera obligated you to perform oral sex, do you remember during your interview with Agent Luedke back in May, did you disclose or tell him those details?**

A. Not -- not in full detail, ___but I did convey to him that he had placed it in my mouth.___

**Q. Okay. Do you remember specifically, Ms. Otero, as you sit here today, what you conveyed? And say specifically as to what you told, to the best of your memory, Agent Luedke back in May as to Mr. Rivera and his penis.**

A. Basically I touched up on the same topics that I touched up here. I spoke to him about our transition to Miami. I did -- I did comment to him -- convey to him that he had entered my room, that he grabbed me by my head, but I did not convey to him that he obligated me to perform oral sex on him. As I have formerly stated, this is a very challenging subject for me to touch on. I never lied when I spoke to him. ___I did tell him that he placed it in my mouth.___ The only thing is I didn't speak in full detail about that happening.

Q. Ms. Otero, did you speak with anyone else prior to today about this incident that you're describing back in 2010 into 2011 and tell someone with the government that Mr. Rivera put his penis in your mouth?

A. As I just reiterated, it was conveyed to his mother -- what had taken place to my mother. But, no, I never -- I never

10

commented to no one of the full occurrence.

Q. So do you agree, then, Ms. Otero, that as you sit here today in front of this jury, this is the first time you're telling someone from the government that Mr. Rivera actually placed his penis in your mouth?

*A. Just to reiterate, the only thing I conveyed to the federal agents is that he had placed it in my mouth*, but I didn't -- I didn't make any further commentary as to the details.

So in all reality, today's when I'm bringing the whole matter to light.

MR. LANDERS: One moment.

(Pause in proceedings.)

. . .

**MR. LANDERS: Your Honor, I appreciate the opportunity to ask questions during the proffer with the jury not here as to what Ms. Otero would testify to.**

**I think now she has changed her testimony because Ms. Washington, during a proffer when the jury was already out -- after I asked to approach, Ms. Washington asked -- I believe, and it can be read back, "Did you previously tell anyone about that?" and I believe her testimony was no. And now she just testified several times in front of the Court that she -- she, we'll say, informed -- trying to think of the right word -- informed Agent Luedke. And that's, based on the government's notice, on May 3rd, 2024, that Mr. Rivera had placed his penis in her mouth.**

That is another new revelation, not just obligated to perform oral sex. That is -- **whether she said it to Agent Luedke or not, that's her testimony. She has testified several times under oath now as to inconsistent statements as to who she told, what she told.**

So I'm asking to strike her testimony as to -- at this point her testimony is inconsistent, and I believe she's committing a fraud in court and ultimately perjuring herself.

. . . **THE COURT: Did y'all not talk to her beforehand?**

**MS. WASHINGTON: We did, Your Honor. We did talk to**

11

**her, and they were consistent with this report.**
**She did not disclose this oral sex**. She disclosed
that she'd been hit in the mouth. Now, whether it was that she
was hit in the mouth and she felt like saying hit in the mouth
versus -- I don't know how much she wants to say penis went in
her mouth. To her they're similar enough that she -- that is
what she said.

We did speak to her, and her prior comments were
consistent with this report in terms of the hitting her in the
mouth. So why she's now saying, "Oh, he placed it in my
mouth," I don't know.

Whether it was a language barrier that she was
having, I can't say. But all of the previous discussions with
her were consistent with that report.

THE COURT: None of this was noticed, you know.

. . .

[Prosecutor] I wasn't attempting to offer evidence I was unaware
of. She hadn't shared it with anyone. I simply was unaware of
it. As I think she pointed out when I asked her, that this was
new information that she felt comfortable disclosing today, so
I honestly, Your Honor, don't know how to treat it.

. . .

. THE COURT: All right. I went back and took a look
at the notice. And in the notice, on page 2, it says, "The
defendant was wearing only a pair of gray boxers, approached
Adult Victim 1's bed where she was laying, grabbed her neck,
told her to look at his penis. The defendant took his erect
penis out of his boxers, hit her in the face with it. She
protested loudly and cursed at him. The defendant put his
penis away and left her room."

So that's -- that's the notice. The only -- what she
has testified to has been consistent with that notice but for
her statement, "He obligated me to do oral -- perform oral sex
on him." Now, I don't know what that means. I think some of
it may be lost in the translation.

She never testified that she did, and the rest of it
with regard to grabbing the neck, that was -- that was

disclosed. And he hit her in the face with it, that was
disclosed. So I -- you know, and the rest of her testimony was
consistent with the notice.

**And so I'm going to -- I will strike the last**
**statement that she made, which was at, I think, 13:46, which is**
**1:46 in the afternoon on the transcript, that "He obligated me**
**to do oral -- perform oral sex on him." I will strike that.**
**If you wish me to give a curative instruction, I will**
**give a curative instruction. But I will tell the jury that I'm**
**going to strike that last comment that she made on the record,**
**and they are to disregard it.**

.   .   .

MR. LANDERS: The Court is striking --
THE COURT: The last statement.
MR. LANDERS: -- the last statement so possibly --
THE COURT: The Court is striking, "He obligated me
to do oral -- perform oral sex on him."
Let me go back to it.
"And he obligated me to do oral -- perform oral sex
on him," that's what I'm striking.
MR. LANDERS: Yes. And in explaining that and
instructing the jury, I would propose that the Court would
advise the jury that you have stricken this witness's last
statement and to disregard that.
I wouldn't re-highlight exactly what she said, but
that the Court has made a ruling, since the Court has.
**THE COURT: Okay. So I'll instruct the jury that the**
**Court has stricken the witness's last statement and that they**
**are to disregard it.**
MR. LANDERS: That's what the defense is proposing,
Judge.
THE COURT: Any objection to that?
MS. WASHINGTON: No, Your Honor.

(Doc. 63, pp. 34-61)(emphasis supplied)

The district court ultimately denied the motion for mistrial without

13

explanation and without making any findings for the record.  (Doc. 64, p. 82)

**JUDGMENT OF ACQUITTAL ARGUMENT - LEGAL INSUFFICIENCY RE THE ELEMENT OF SEXUALLY EXPLICIT CONDUCT**

The defense made arguments for judgment of acquittal at the close of the

Government's case, pursuant to Rule 29, Fed. R. Crim. P.  The primary focus of

the argument was the failure of the Government to prove an essential element of

the offense, *viz.*, sexually explicit conduct.

> There are three counts before the Court, Your Honor.
> And looking at the evidence in the light most favorable to the
> government, it's defense argument that there's insufficient
> evidence, and the government has failed to prove each element
> beyond and to the exclusion of a reasonable doubt.
> And, Your Honor, I'm going to focus the argument on
> the two key words here, and that's sexually explicit. The
> state has provided the Court with four exhibits that I would
> focus for this argument, Exhibits 69, 71, 72, and 73.
> There are images, clearly, and there is video. What
> the state has failed to produce is sexually explicit,
> lascivious, sexual exploitation images before this Court.
> Now, with that in mind, I bring the Court's focus to
> *United States versus Dost*, 636 F.Supp. 828. So the first
> factor, whether the focal point of the visual depiction is on
> the child's genitalia or public area -- pubic area, that's not
> the focal point of any of those photos.
> Whether the setting is of a visual depiction of
> sexually suggestive. Again, that is not what we have. There's
> a nude body in certain of these images before the Court, but
> sexually suggestive, no.
> So then the third is whether or not the child is
> depicted in an unnatural pose or in inappropriate attire,

14

considering the age of the child. So these are nude photos, but, again, that sexually suggestive or sexually exploitive or lasciviousness that is required for the government to provide -- or that level of evidence is still missing.

Whether the child was fully or partially clothed or nude. And here, yes. Yes, they do have that, but is it sexually exploitive? The defense would argue no.

If this would satisfy sex exploitation, then we would need to remove all the photos out of the galleries, the museums, the medical examiner's office. The human form or the human body in the nude is not enough. There is more required.

So whether these -- and then the fifth element here is for -- the visual depiction suggests sexual coyness or a willingness to engage in sexual activity. Again, the answer is no.

And then lastly, whether that visual depiction is intended or designed to elicit a sexual response in the viewer. So the answers to these overwhelmingly are no.

And what's the importance of that? The government brought these three counts before the Court. The government has the responsibility and the duty to prove up these elements, that it's constituting photos or images that are sexually explicit, that they're -- and I'm focusing on that word "lasciviousness," and that's what's missing here.

And although these are just words before the Court or argument before the Court, I'd ask the Court to focus in and look at those exhibits that we were told by the officer today in his testimony that this is the focus.

So under 18 U.S.C. 2251(e) and (a) that's the focus of this particular case. And it's the defense argument that looking at this in the light most favorable to the government, that they have failed to meet this burden, and in that failure to meet the burden, that these are not sexually promiscuous or not photos that reach that level of sexual exploitation or lasciviousness.

Although they do have, I believe it's approximately 14 images and a video, that the exposure -- the argument of the

pubic area and the breasts are not reaching that level that is
required, that the government has not produced sufficient
evidence to bring it up to that level of the sexual
exploitation or depicting lascivious.
And I know I'm repeating it, Your Honor, but if this
is what is required, then we are talking about removing every
photo from every medical examiner office, every photo from
any -- any biology class. More is needed. Much more is
needed. That's why we have these six factors, and they haven't
produced that in this particular case.

(Doc. 63, pp. 66-69)

The district court denied the motion for judgment of acquittal. (Doc. 63, p.

72)

The defendant was convicted of all three counts and sentenced to 262

months imprisonment, followed by ten years supervised release, concurrent on all

three counts. (Doc. 71)

A timely notice of appeal was filed (Doc. 75), and this appeal has followed

in a timely manner.

## STANDARDS OF REVIEW

### DENIAL OF MOTION FOR MISTRIAL

Preserved evidentiary rulings and denials of motions for mistrial are reviewed for abuse of discretion. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007); *United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004).

*United States v. Joyner*, 899 F.3d 1199, 1206 (11thCir. 2018).

### ADMISSIBILITY OF 404(b) AND 414 EVIDENCE

"In reviewing the district court's decision admitting Rule 404(b) evidence, we are governed by the abuse of discretion standard. *United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.), cert. denied, 461 U.S. 909, 103 S. Ct. 1884, 76 L. Ed. 2d 813 (1983); *United States v. Roe*, 670 F.2d 956, 967 (11th Cir.), cert. denied, 459 U.S. 856, 103 S. Ct. 126, 74 L. Ed. 2d 109 (1982)."

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (*en banc*)

### ABUSE OF DISCRETION

As Judge Carnes wrote for the majority *en banc* in *United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (*en banc*), the deferential abuse of discretion standard does not mean that deference amounts to an abdication of appellate review nor does it mean discretion is unbridled.

Indeed, it is *per se* an abuse of discretion if a district court misapplies the law, as was done in this case. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . ." *Cooter & Gell*

*v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

*Cooter & Gell* noted the difficulty in separating legal from factual conclusions. "The Court has long noted the difficulty of distinguishing between legal and factual issues. See *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) ("Rule 52(a) does not furnish particular guidance with respect to distinguishing law from fact. Nor do we yet know of any other rule or principle that will unerringly distinguish a factual finding from a legal conclusion")." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990). This is especially so in this case in which the district court made what it styled findings of fact but which were legal assumptions, based on an incorrect application of the controlling law. See *Thompson v. Keohane*, 116 S. Ct. 457, 464 (1995). Cited in United States Attorneys' Manual, Civil Resource Manual, § 97.

Conclusions of law are reviewed *de novo*. *United States v. Johns*, 984 F.2d 1162 (11th Cir. 1993). Mixed questions of law and fact are also reviewed *de novo*. *United States v. Merrill*, 513 F.d 1293 (11th Cir. 2008).

**SUFFICIENCY OF THE EVIDENCE**

We review *de novo* the denial of a motion for judgment of acquittal. *United States v. Bowman*, 302 F.3d 1228, 1237 (11th Cir. 2002). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence *de novo*, drawing all reasonable inferences in the government's favor." *Id*.

*United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005).

## SUMMARY OF ARGUMENTS

**I. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING A MOTION FOR MISTRIAL ONCE THE GOVERNMENT'S 404(b) WITNESS INDISPUTABLY PERJURED HERSELF DURING THE COURT'S MIDTRIAL INQUIRY INTO HER SURPRISE CLAIM THAT THE DEFENDANT HAD FORCED HER TO PERFORM ORAL SEX, WHEN THIS CLAIM WAS NOT IN THE GOVERNMENT'S PRETRIAL 404(b) NOTICE, AND WHEN THE GOVERNMENT ASSURED THE COURT THE WITNESS WAS LYING WHEN SHE CLAIMED SHE HAD TOLD THE GOVERNMENT THIS IN HER PRETRIAL WITNESS PREPARATION INTERVIEW.**

As all trial attorneys know in a child sex case, testimony by a second alleged child sex victim under Rule 404(b) and 414 inevitably seals a guilty verdict - a one off is reasonable doubt, a second removes any doubt. Such was the case here.

The Government filed a 404(b) notice of its intent to introduce the testimony of a second witness, a child at the time of her alleged incident, now an adult, that the defendant years earlier had exposed himself to her. The defense filed a written objection and the district court entered a written pretrial order based on the pleadings, without any evidentiary hearing, permitting the 404(b) witness. As the law requires, the district court found that the 404(b) witness allegation was sufficiently reliable to be admitted.

19

This summary process later proved the undoing of the order, because at trial, the 404(b) witness brought forth a new claim, a claim not in the 404(b) notice, that the defendant forced her to perform oral sex on him. The defense objected and moved for mistrial. When questioned by the district court, the Government counsel assured the district court that the 404(b) witness had never made this allegation during her careful pretrial interview.

However, the 404(b) witness under oath repeatedly and falsely told the district court that she *had* made this additional claim of forced oral sex to the Government in her pretrial witness preparation.[2]

The Government flatly denied that this was true. The Government trial counsel assured the district court that this was not true.

At this point, defense counsel addressed the district court's pretrial order finding the evidence sufficiently reliable to be admitted, and argued that given the witness's inconsistent statements, it was now clear that the evidence was not sufficiently reliable to admit, and because there must be sufficient reliable proof of the alleged act, lacking that, the testimony was not admissible. But having been

---

[2] Not once, not twice, but *three times* on cross-examination by defense counsel Adult Victim 1 testified that she had told the case agent that the defendant had placed his penis in her mouth. (Doc. 63, pp. 52-53) This is sexual battery, and as noted below, is considered rape. This was *not* disclosed in the 404(b) notice.

admitted a mistrial was required.

The trial court offered as the only remedy a benign instruction to the jury to disregard the last statement the witness had made (the statement which had not been disclosed in the pretrial 404(b) notice). The trial court reserved ruling. Confronted with the 404(b) witness's indisputable perjury, the district court failed to make any further or new fact finding or credibility determination or determination of the reliability of the evidence supporting the allegation of the alleged prior bad act. When, at the conclusion of the trial, defense counsel brought to the district court's attention that she had reserved ruling, she simply stated that the motion for mistrial was denied, without making any fact findings or conclusions of law or any explanation for the basis for her ruling.

But this need not detain this court, because the Government counsel as an officer of the court assured the trial court that the 404(b) witness's sworn testimony that she had disclosed this allegation to the Government before trial, was *false*. The Government cannot be heard and we are confident will not be heard to argue otherwise on this appeal.

Given this concession at the trial court level by the Government, this Court must therefore conclude that the 404(b) witness was not credible, her testimony was indisputably inconsistent, and because the allegation rested solely on her

testimony and was otherwise uncorroborated, the evidence was not legally sufficient to admit. Therefore none of her 404(b) testimony was properly admitted at trial, neither that disclosed in the 404(b) notice, nor her new false claim that the defendant had forced her to perform oral sex.

Additionally, it is undisputed that the Government introduced extremely prejudicial evidence - that the Defendant had not simply exposed himself to Adult Victim 1, but that he had forced her to perform oral sex, a forcible sexual battery - without any prior notice as required by Rules 404(b) and 414. The trial court's curative instruction, to "disregard the last statement" Adult Victim 1 made was inadequate to cure the substantial prejudice of the rape allegation. This rape allegation was so highly prejudicial as to be incurable by a cautionary instruction.

The district court's ruling denying the defense motion for mistrial was error, and given the significance of 404(b) witness evidence in a child sex case, was reversible error.

## II. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO ESTABLISH SEXUALLY EXPLICIT CONDUCT.

Rivera moved for a judgment of acquittal in this case on the basis that the Government had failed to prove that the cameras Rivera gave to his stepdaughter

produced images that were sexually explicit. The images produced by the camera consisted only of the girl changing clothes. Mere nudity does not amount to sexually explicit conduct under this court's case law. Considering the Dost factors, which form the basis for this court's pattern jury instruction on this issue, the only factor of six which is satisfied is that the depictions contain nudity. Given the evidence presented at trial, the trial court reversibly erred in denying Rivera's motion for judgment of acquittal on this basis. To the extent that this court believes that its current case law required denial of the motion for judgment of acquittal, Rivera asks that this Court reconsider its precedent in light of *United States v. Williams*, 553 U.S. 285 (2008) and *United States v. Hillie*¸ 39 F. 4th 674 (D.C. Cir. 2022).

**ARGUMENTS**

**I. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING A MOTION FOR MISTRIAL ONCE THE GOVERNMENT'S 404(b) WITNESS INDISPUTABLY PERJURED HERSELF DURING THE COURT'S MIDTRIAL INQUIRY INTO HER SURPRISE CLAIM THAT THE DEFENDANT HAD FORCED HER TO PERFORM ORAL SEX, WHEN THIS CLAIM WAS NOT IN THE GOVERNMENT'S PRETRIAL 404 NOTICE, AND WHEN THE GOVERNMENT ASSURED THE COURT THE WITNESS WAS LYING WHEN SHE CLAIMED SHE HAD TOLD THE GOVERNMENT THIS IN HER PRETRIAL WITNESS PREPARATION INTERVIEW.**

This case presents a two-fold 404(b)[3] problem. First, testimony which fell outside that which the Government provided notice, and second, a witness who perjured herself during the court's inquiry about the lack of notice, and whose resulting lack of credibility, coupled with lack of any supporting corroboration, resulted in the necessary conclusion that there was insufficient reliable proof that the noticed 404(b) evidence (as well as the surprise new 404(b) evidence) actually took place, therefore none of the 404(b) evidence should have been admitted. But having admitted it, and the jury having heard it, the Defendant was entitled to a mistrial, which he timely sought and for which he specifically argued that both

---

[3] For simplicity of reference, unless otherwise specified, each reference hereinafter to 404(b) will include both Rule 404(b) and Rule 414. The Government filed a single notice of intent to use such evidence, citing both rules, and the evidence was intended to be the same under both 404(b) and 414.

24

lack of notice and lack of reliability of the evidence to support its admission, required a mistrial.

The court's curative instruction was limited to the surprise testimony, and did not address the noticed testimony, therefore it had no palliative or curative effect whatsoever to the improperly admitted 404(b) evidence, and given the highly prejudicial nature of the surprise testimony that the defendant had raped Adult Victim 1,[4] was inadequate to cure the harm, and the nature of the evidence, in particular the surprise rape claim, was so damning as to convince this Court that the testimony was not harmless.

Although a trial court is not required to make a credibility determination *prior* to conditionally admitting 404(b) evidence, when there is no corroboration of the alleged 404(b) act, and when the credibility of the 404(b) witness has been so impeached by her own perjury as was the case here, when she insisted not once but three times that she had told the Government her rape claim in her pretrial witness interview - a claim which was flatly and repeatedly denied by the Government, then under circumstances such as these the only conclusion can be

_____

[4] The Federal Bureau of Investigation classifies any oral penetration by a sex organ of another person without the consent of the victim, as rape. https://ucr.fbi.gov/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/violent-crime/rape

that there was insufficient reliable evidence to admit her testimony *in toto*.

Notably and perhaps understandably after this exploded mid trial, despite the defense objection that the Court was now faced with a situation that it was required to revisit its pretrial ruling that the 404(b) evidence was sufficiently reliable to be admitted, the trial court made no finding that the 404(b) witness's testimony was reliable or credible, nor any finding that the evidence was otherwise sufficiently reliable to satisfy the legal standard for admissibility. Considering all of the 404(b) witness's testimony, its inconsistencies and the indisputable fact that she perjured herself when she claimed she had told the government before trial about her story that the defendant had forced her to perform oral sex, this Court cannot conclude that a jury could reasonably find that any of the claims she made were sufficiently established by a preponderance of the evidence.

That standard is well established, going back to this Circuit's *en banc* decision in *United States v. Beechum*, 582 F.2d 898, 902 (5th Cir. 1978) (*en banc*).

> As the rule provides, the task for the trial judge is to determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense. *See* Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv.L.Rev. 165 (1927). The judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense, nor need he require the Government to come forward with clear and convincing proof.[16] The standard for the admissibility of extrinsic offense evidence is that of rule 104(b): "the

preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." 21 Wright & Graham, Federal Practice and Procedure: Evidence § 5054, at 269 (1977).

*Beechum,* at 913 (footnote omitted).

*Beechum* was later followed by the Supreme Court in *Huddleston v. United States*, 485 U.S. 681 (1988). *Huddleston,* following *Beechum*, explained the standard governing admissibility, which is concisely summarized in *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015):

> The predicate question in assessing the admissibility of evidence of an uncharged offense under Rule 404(b) is whether the Government offered sufficient proof of the offense. "If the proof is insufficient, the judge must exclude the evidence because it is irrelevant." *Beechum*, 582 F.2d at 913. Proof of an uncharged offense is sufficient if "the jury could reasonably find" that the offense occurred "by a preponderance of the evidence." [*United States v.*] *Gutierrez-Mendez*, 752 F.3d at 424 (quoting *Huddleston v. United States*, 485 U.S. 681, 692, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988)).

*United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015).

The trial court made no finding in response to the defense objection. Although no *preliminary finding* was required to be made, the evidence was subject to the condition that once introduced the burden was on the proponent, the Government, to prove by a preponderance standard that the alleged acts had in fact occurred. The Government could not and did not meet that burden, and it was an

abuse of discretion for the trial court, after timely and specific objection was made by the defense, to fail to make any finding in response. The only ruling the defense received was "motion denied." This was an abuse of discretion, the evidence clearly was not admissible, and the nature of the allegation - a forcible rape - was such as to render the trial fundamentally unfair.

The defense asked for a mistrial, instead all it got was a benign curative instruction telling the jury to "disregard the last statement."

> "When the court gives a curative instruction, as it did here, we presume the jury followed the instruction. *See id*. As we have stated: when a court "admi[ts] and later exclu[des] evidence, an instruction to disregard evidence withdrawn from the jury is sufficient grounds" for affirmance "*unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition*." *United States v. Nicholson*, 24 F.4th 1341, 1354 (11th Cir. 2022) (quotation marks omitted).

*United States v. Murphy*, 2024 U.S. App. LEXIS 29576, *29-30 (11ᵗʰ Cir. 2024) (emphasis supplied).

Such was the case with the surprise testimony of a forcible sexual battery. Forcible oral sex is degrading and humiliating when perpetrated against an adult but is unimaginable when perpetrated against a child. In this Circuit and numerous other circuits evidence of forcible oral sex is well established as a basis for an upward departure from the sentencing guidelines.

The district court concluded that the defendant's case involved

"aggravating circumstances of a kind or degree that are not adequately taken into consideration by the Sentencing Guidelines." R3-99. The court cited "the number of assaults" ("at least three") and "the nature of the assaults" ("forcible oral, anal, and vaginal sex, degrading in type, and insulting in nature"). R3-99. Making its decision pre-*Koon*, the court obviously did not classify each circumstance as a forbidden, encouraged, discouraged, or unmentioned basis for departure. The factors cited, however, are clearly "encouraged" factors under the Guidelines. *See* U.S.S.G. §§ 2A3.1, 5K2.8. Other circuits have established that forced oral and anal sex may be especially degrading under § 5K2.8 and that those factors are not taken into account under § 2A3.1. *See United States v. Johnson*, 56 F.3d 947, 958 (8th Cir.1995) (holding that defendant's extreme conduct, including forcing victim to perform oral sex, fell within parameters of § 5K2.8); *United States v. Anderson*, 5 F.3d 795, 804 (5th Cir.1993) (rejecting argument that forced oral and anal sex were already taken into consideration by Guidelines); *United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir.1995) (stating that "extreme conduct may be established by a showing of anal intercourse, which is a degrading form of sexual abuse"); *United States v. Ellis*, 935 F.2d 385, 386 (1st Cir.1991) (holding that particularly degrading forms of sexual abuse warranted upward departure). We agree.

*United States v. Lewis*, 115 F.3d 1531, 1538-1539 (11th Cir. 1997).

No curative instruction and certainly not one as innocuous as the one given in this case could cure the toxic prejudice of a claim of forcible sexual battery against a child. Once the jury heard this testimony, there was no possibility of the defendant receiving a fair trial.

Additionally, it is undisputed that the Government introduced extremely prejudicial evidence - that the Defendant had not simply exposed himself to Adult

Victim 1, but that he had committed rape, a forcible sexual battery - without any prior notice as required by Rules 404(b) and 414. The trial court's curative instruction, to "disregard the last statement" Adult Victim 1 made was inadequate to cure the substantial prejudice of the rape allegation. This rape allegation was so highly prejudicial as to be incurable by a cautionary instruction.

Rule 404(b), Fed. R. Evid., requires prior notice before trial:

The rule requires "the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendments. Thus, the Government was required to provide notice of the prior bad acts to which Ceballos testified in rebuttal. . . . The policy behind the Rule 404(b) notice requirement is "to reduce surprise and promote early resolution on the issue of admissibility." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendments.

*United States v. Carrasco*, 381 F.3d 1237, 1240-241 (11th Cir. 2004).

No notice was given of the surprise rape testimony - arguably through no fault of the Government - their witness simply elected to perjure herself at trial by adding a surprise in front of the jury. But whatever the reason, the analysis is the same, when 404(b) evidence is presented without any notice, the Court is required to determine whether the admission of the evidence was so prejudicial as to not be susceptible to remedy by a curative instruction. That was the case here. Nothing could undo the harm of this midtrial, surprise rape allegation, certainly not the

benign "disregard that last statement" instruction given here. A mistrial was

mandated. *See United States v. Carrasco*, 381 F.3d 1237, 1240-241 (11th Cir.

2004) (conviction reversed due to admission of 404(b) evidence without prior

notice and evidence was not harmless).

The district court abused its discretion in denying the motion for mistrial,

the error was not harmless, therefore the convictions must be vacated and the case

remanded. The record is clear that the Government was not a party to the perjury

of their 404(b) witness. The Government did not intend to provoke a mistrial,

therefore there is no Double Jeopardy implication to this Court reversing the

convictions and remanding for further proceedings consistent with this argument,

including a possible retrial.[5]

---

[5] However, should this Court reverse on the basis of the legal insufficiency
argument below, retrial would be barred by Double Jeopardy.

> *Burks v. United States* and *Greene v. Massey* carved a narrow exception
> from the understanding that a defendant who successfully appeals a
> conviction is subject to retrial. In those cases, we held that the Double
> Jeopardy Clause precludes retrial "once the reviewing court has found
> the evidence legally insufficient" to support conviction. *Burks*, 437 U.S.,
> at 18; *Greene*, 437 U.S., at 24.

*Tibbs v. Fla*., 457 U.S. 31, 40-41 (1982).

## II. THE DISTRICT COURT REVERSIBLY ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO ESTABLISH SEXUALLY EXPLICIT CONDUCT.

Rivera was charged in this case with three counts of violating 18 U.S.C. § 2251(a) which allegedly occurred on three different days. These charges were based on images produced by three devices, with cameras that Rivera gave his stepdaughter, which were set up in her room. The devices consisted of a USB charging tower, an alarm clock, and a Bluetooth speaker. The alleged victim testified that all three devices were on her vanity in her bedroom. 18 U.S.C. § 2251(a) reads in relevant part as follows:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) . . .

18 U.S.C. § 2251(a). In Rivera's trial there was simply no evidence that the images produced by the cameras contained any visual depiction of sexually explicit conduct. Sexually explicit conduct for purposes of 18 U.S.C. § 2251(a) is defined in 18 U.S.C. § 2256(2)(A) as follows:

"sexually explicit conduct" means actual or simulated—

(i)sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii)bestiality;

(iii)masturbation;

(iv)sadistic or masochistic abuse; or

(v)lascivious exhibition of the anus, genitals, or pubic area of any person;

18 U.S.C. § 2256(2)(A).

Rivera's counsel moved for a judgment of acquittal arguing that there was insufficient evidence, even in the light most favorable to the government, that the cameras Rivera gave to his stepdaughter produced images that were sexually explicit. The images here were simply images captured of the girl changing clothes, there was nothing sexual about the images whatsoever. The Southern District of California grappled with the meaning of lascivious exhibition of the genitals in *United States v. Dost*, 636 F. Supp. 828 (S.D.Cal., 1986). The *Dost* court formulated six factors to be considered in determining whether images are lascivious. These so called "*Dost* factors" formed the basis of this Court's Pattern

Jury Instruction. *See United States v. Gryzbowicz*, 747 F.3d 1396, FN8 (11th Cir. 2014). The *Dost* factors are as follows:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D.Cal., 1986). Here, as argued in Rivera's judgment acquittal argument below, the factors compel a finding that the images and video captured here do not constitute lascivious exhibition of the genitals. First, the visual depictions did not focus on the child's genitalia or pubic area; second the visual depictions were not sexually suggestive or in a place or pose associated with sexual activity as they were of a girl changing in her bedroom; third the child was not in an unnatural pose or wearing inappropriate attire, she was simply a teenager changing clothes; the fourth factor, nudity, is the

only factor that the images satisfy; fifth the visual depictions, being merely a girl changing clothes, does not suggest any sexual coyness or willingness to engage in sexual activity; and finally the visual depictions were not designed in any way to elicit a sexual response in the viewer. Considering these *Dost* factors there is no way that a reasonable jury could have determined that the images and video were specifically intended to capture lascivious exhibition of the genitals or pubic area of the child. Therefore the trial court should have found there to be insufficient evidence and granted Rivera's motion for judgment of acquittal.

The trial court denied Rivera's judgment of acquittal argument based on this court's precedent in *United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016). *Holmes*, however, is distinguishable based on its facts from the instant case. This Court found in *Holmes* that a reasonable jury could have found that the defendant's conduct including placing cameras in the bathroom, angling the cameras toward the pubic region, and then editing the videos to focus on the genitals was sufficient to make a depiction of an otherwise innocent child acting innocently, become sexually explicit conduct. Here, we have none of those aggravating factors. The cameras at issue here were in the bedroom, not the bathroom, and were simply aimed out into the room from the vanity, they were not specifically angled to capture the pubic region and the depictions captured by the

cameras were not edited in a way to make them sexually explicit, there were simply photos of a girl changing clothes. Therefore, Rivera asks that this Court find that even under its existing precedent, that the photos at issue in this case do not constitute sexually explicit conduct as proscribed by 18 U.S.C. § 2251 and the lower court erred when it denied his motion for judgment of acquittal on that basis.

Rivera further argues that, to the extent this Court finds Rivera's conduct constitutes illegal behavior under 18 U.S.C. § 2251 based on its existing precedent, this Court should reconsider its precedent in light of the circuit split created by the D.C. Circuit court's holding in *United States v. Hillie*, 39 F. 4th 674 (D.C. Cir. 2022). In *Hillie*, the D.C. Circuit considered the *exact* issue presented in the instant case and the court reversed the defendant's § 2251 convictions.[6] The videos at issue in *Hillie* involved the following depictions:

> The first video is 29 minutes and 49 seconds long. It depicts Hillie positioning a camera underneath a bed in JAA's bedroom. Hillie walks back and forth from the camera several times, looking at it from different angles and adjusting its position. Eventually, Hillie exits the bedroom, leaving the camera behind, still recording. Later, JAA enters the bedroom. For several minutes she walks around the room, clothed, dancing and singing to herself. She proceeds to undress, standing almost directly in front of the camera. While

---

[6] This portion of Rivera's argument is based on noted appellate attorney Michael Ufferman's petition for certiorari for Jonathan High, cert. denied January 29, 2025, *Jonathan High v. United States*, 145 S.Ct. 1146 (2025).

undressing, she bends over in front of the camera, exposing her genitals to the camera for approximately nine seconds. After she has undressed, she sits slightly to the left of the camera and appears to clean her genitals and legs with a towel. While she does this, her breasts and pubic hair are visible but her genitals are not. She proceeds to apply lotion to her body for approximately 11 minutes. While she does this, her breasts are visible and her pubic hair is occasionally visible but her genitals are not. She proceeds to stand up and walk naked around the room. While she walks, her pubic area is intermittently visible for periods of approximately one or two seconds. She then dresses and exits the room. After JAA exits the room, Hillie returns and retrieves the camera.

The second video is 12 minutes and 25 seconds long. It depicts Hillie positioning a camera in a bathroom ceiling vent, directly above a toilet. Hillie then leaves the bathroom. Shortly after, Jo. A enters, sits on the toilet, stands up, and leaves. JAA and another minor, whom the Government refers to as KA proceed to enter the bathroom. JAA proceeds to sit on the toilet. The upper part of JAA's buttocks is visible for approximately 20 seconds while she sits on the toilet. Because the camera is directly above the toilet, JAA's genitals are not visible. JAA stands up and KA proceeds to sit on the toilet. The upper part of KA's buttocks is visible for approximately 20 seconds, but her genitals are not visible. JAA proceeds to wipe KA's pubic area with a washcloth. KA's pubic area is not visible while she does this, although occasionally the upper part of KA's buttocks is visible. KA proceeds to leave the bathroom. After she has left, JAA removes her pants and underwear and proceeds to wipe her pubic area with a washcloth. JAA's pubic area is visible for approximately 16 seconds while she does this. JAA proceeds to dress and exit the bathroom. Jo. A then enters and sits on the toilet again. Jo. A then stands up, looks up at the ceiling vent, sees the camera, and removes it.

The remaining four videos depict Hillie hiding a video camera in a bathroom ceiling vent and a bedroom dresser, but do not depict JAA's or JA's genitals or pubic area.

*Hillie*, 39 F.4th at 677-678 (internal record citations omitted). The defendant was

subsequently charged with sexual exploitation of a minor (in violation of §

2251(a)) in relation to his production of the two videos in which JAA's genitals

and pubic area are visible (as described above). The defendant was later convicted

of these counts following a jury trial.

On appeal, the D.C. Circuit held that there was insufficient evidence to

support the defendant's convictions of sexual exploitation of a minor. In reaching

this conclusion, the D.C. Circuit relied on both this Court's First Amendment

caselaw and the Supreme Court's holding in *Williams*:[7]

> These constructions were necessary antecedents to determining
> whether the statutes at issue in *Ferber*,[8] *X-Citement Video*,[9] and
> *Williams* were overbroad, *see Williams*, 553 U.S. at 293 ("[t]he first
> step in overbreadth analysis is to construe the challenged statute; it is
> impossible to determine whether a statute reaches too far without first
> knowing what the statute covers"), and are therefore binding
> holdings, *see In re Grand Jury Investigation*, 916 F.3d 1047, 1053
> (D.C. Cir. 2019). We are of course bound by this directly applicable
> Supreme Court precedent, U.S. CONST. ART. III, § 1; *Rodriguez de*
> *Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989), and, as
> the Court has explained, we must faithfully apply those precedents
> where the same statutory language is at issue, as it is here:

---

[7] *United States v. Williams*, 553 U.S. 285 (2008).

[8] *New York v. Ferber*, 458 U.S. 747, 749 (1982).

[9] *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994).

38

It is this Court's responsibility to say what a [federal] statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A *judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.*

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-313 (1994) (emphasis added). Additionally, the Court's authoritative construction of statutory language must be followed in subsequent prosecutions because it is that construction which provides fair notice to citizens of what conduct is proscribed. *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (unexpected or unforeseen authoritative judicial construction that broadens clear and more precise statutory language violates due process).

. . . .

Based on the foregoing, we construe "lascivious exhibition of the anus, genitals, or pubic area of any person" in 18 U.S.C. § 2256(2)(A)(v) to mean that the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity. *See* Webster's Third New Int'l Dictionary (1981) (defining "lascivious" to mean, among others, "inclined to lechery: lewd, lustful"); Black's Law Dictionary (5th Ed. 1979) (defining "lascivious" as, among others, "tending to incite lust" and "lewd"). This construction is consistent with the phrase "sexually explicit conduct," of which the "lascivious exhibition of the genitals" is one form. As *Williams* explained:

> "Sexually explicit conduct" connotes actual depiction of the sex act rather than merely the suggestion that it is occurring. And "simulated" sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not

actually have occurred. The portrayal must cause a
reasonable viewer to believe that the actors actually
engaged in that conduct on camera.

553 U.S. at 297. Further, just as *Williams* relied upon the *noscitur a sociis* canon to interpret the promotion of child pornography statute, 18 U.S.C. § 2252A(a)(3)(B), *id.* at 294-295, we believe it has relevance here. Because "lascivious exhibition of the anus, genitals, or pubic area" appears in a list with "sexual intercourse," "bestiality," "masturbation," and "sadistic or masochistic abuse," its "meaning[ ] [is] narrowed by the commonsense canon of *noscitur a sociis* – which counsels that a word is given more precise content by the neighboring words with which it is associated." *Id.* at 294. Thus, the "lascivious exhibition of the anus, genitals, or pubic area" must be performed in a manner that connotes the commission of a sexual act, which is consistent with how the prosecutors construed "lewd exhibition of the genitals" when asking the Supreme Court to uphold the New York statute in *Ferber. See* Brief for Petitioner, *Ferber*, 458 U.S. 747, (1982) (No. 81-55), 1982 WL 608534, at *24 ("Notably, the statute, in defining sexual conduct, does not include simple nudity, although it does prohibit lewd exhibition of the genitals. Nudity is prohibited only when it is accompanied by simulated sexual conduct, that is, the explicit depiction of the prohibited acts. N.Y. Penal Law § 263.00 (3) & (6). In not prohibiting simple nudity, the statute allows producers ample room to express an idea, convey a message or tell a story about the sexual conduct of children."). Further, this construction is consistent with the Court's repeated description of the conduct prohibited by the terms "sexual conduct" and "sexually explicit conduct" in child pornography statutes as "hard core" sexual conduct, as described above.

To be clear, this construction of the statute – although it is informed by First Amendment caselaw – is not a holding that Congress has run up against a constitutional limit on its authority to criminalize conduct like Hillie's. In fact, both federal law and the law of the District of Columbia contain prohibitions on voyeurism. *See* 18 U.S.C. § 1801; D.C. Code § 22-3531. And we see no barrier to

imposition of enhanced penalties when the victim is a minor. *Cf.
Ferber*, 458 U.S. at 756-757. The First Amendment cases are
instructive simply in that they shed light on the meaning that
Congress ascribed to the statutory term "lascivious exhibition of the
anus, genitals, or pubic area of any person."

Applying this construction to the evidence introduced at trial, we
conclude that no rational trier of fact could find JAA's conduct
depicted in the videos related to counts 1-3 to be a "lascivious
exhibition of the anus, genitals, or pubic area of any person," as
defined by § 2256(2)(A). To fall within the definition of "lascivious
exhibition of the . . . genitals," JAA's conduct depicted in the videos
must consist of her displaying her anus, genitalia or pubic area in a
lustful manner that connotes the commission of a sexual act. As the
dissent agrees (pp. 698-699), none of the conduct in which JAA
engages in the two videos at issue comes close. The videos depict
JAA engaged in ordinary grooming activities, some dancing, and
nothing more. While JAA disrobes and her nude body is shown,
along with fleeting views of her pubic area, JAA never engages in
any sexual conduct whatsoever, or any activity connoting a sex act.
There is certainly nothing that could be reasonably described as "hard
core," sexually explicit conduct. The depiction of JAA's conduct does
not even suggest "sexual coyness or a willingness to engage in sexual
activity." Dissent at 699. We agree and highlight that we view the
evidence in the same way as our dissenting colleague: the evidence
against Hillie showed no sexual conduct or coyness by JAA nor
anyone else. Accordingly, we hold that no rational trier of fact could
find JAA's conduct depicted in the videos to be a "lascivious
exhibition of the . . . genitals" as defined by § 2256(2)(A). We
therefore vacate Hillie's convictions on counts 1-3 and direct the
District Court to enter a judgment of acquittal on those counts.

*Hillie*, 39 F.4th at 683-686. As explained by the D.C. Circuit in *Hillie*, to fall

within the definition of "lascivious exhibition of the . . . genitals," the conduct

depicted in the videos must consist of the victims displaying their anus, genitalia

41

or pubic area in a lustful manner that connotes the commission of a sexual act. That did not happen here. The statute on its face is clear that the conduct it is prohibiting is the production of depictions of sexual conduct, not mere nudity. Here, there was no evidence presented at trial that anything more than nudity was captured by the cameras. Therefore, this Honorable Court should reverse the lower court's order denying Rivera's motion for judgment of acquittal, vacate his judgment and sentence, and find that there was legally insufficient evidence to convict Rivera of violating 18 U.S.C. § 2251.

## CONCLUSION

Rivera respectfully requests this Honorable Court vacate the judgment, sentence and order of forfeiture in his case based on the arguments above and remand the case for further proceedings consistent therewith. If the Court reverses the convictions on the sufficiency of evidence argument, retrial is barred due to Double Jeopardy, but if the Court were only to reverse the convictions based on the evidentiary issue, the case should be remanded for a possible new trial.

Respectfully submitted,

KENT & McFARLAND
ATTORNEYS AT LAW

 s/ William Mallory Kent
WILLIAM MALLORY KENT
Florida Bar Number 260738

 s. Ryan Edward McFarland
RYAN EDWARD McFARLAND
Fla. Bar No. 1002508
24 North Market Street, Suite 300
Jacksonville, Florida 32202
904-398-8000
kent@williamkent.com
ryan@kent-mcfarland.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), the undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains ca. 12,547 words.

**CERTIFICATE OF TYPE SIZE AND STYLE**

Counsel for Appellant certifies that the size and style of type used in this brief is 14 point Times New Roman.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

>      s/ William Mallory Kent
> William Mallory Kent